426 So.2d 1183 (1983)
Vincent J. TRAUTMAN, As Personal Representative of the Estate of Candice Trautman, Deceased, Petitioner,
v.
GENERAL MOTORS CORPORATION, a Foreign Corporation, and the City of Ocala, a Municipal Corporation, Respondent.
No. 82-1631.
District Court of Appeal of Florida, Fifth District.
February 9, 1983.
*1184 John H. Piccin of Musleh, Piccin, Atkins & Krehl, Ocala, for petitioner.
J. Richard Caldwell, Jr., of Rumberger, Kirk, Caldwell, Cabaniss & Burke, P.A., Orlando, and King & Spalding, Atlanta, Ga., of counsel, for respondent General Motors Corp.
No appearance for respondent The City of Ocala.
COBB, Judge.
This is a petition for certiorari review of an order by the trial court disqualifying the attorney for the plaintiff, John H. Piccin, Esquire. The disqualification resulted from a defense motion, supported by an affidavit, alleging a "substantial relationship between the current litigation and Mr. Piccin's prior representation of General Motors Corporation." The motion and affidavit show that Piccin was employed as an attorney for General Motors from May, 1969, until June, 1974, and that he worked until June, 1972, in the products section of GMC's general counsel office.
In the instant case, it is alleged that a 1974 Chevrolet pick-up truck was deficient in design and manufacture because of its excessively light rear end, an excessively vulnerable fuel supply system, and the negligent use of potentially toxic materials in the passenger compartment. These defects, according to the complaint, resulted in the truck sliding off a wet road and burning, causing the death of an occupant from inhalation of toxic gases.
The affidavit filed below in support of the motion, which petitioner asserts is lacking in specificity, reads:
STATE OF MICHIGAN COUNTY OF WAYNE
BEFORE ME personally appeared Joseph M. Rozek who deposes and states as follows:
1. That the Affiant has personal knowledge of the matter set forth herein.
2. That counsel for the Plaintiff, JOHN H. PICCIN, ESQUIRE, is a former employee of Defendant, GENERAL MOTORS CORPORATION.
3. That MR. PICCIN was first employed by GENERAL MOTORS CORPORATION in May of 1969. At that time, MR. PICCIN was assigned to the Products Section of GENERAL MOTORS General Counsel's Office, where he worked until June of 1972.
4. During his time in the Products Section, MR. PICCIN'S duties revolved around the defense of lawsuits alleging the existence of defects in cars and trucks manufactured by this Defendant. As a result, he became acutely familiar with the entire apparatus of GENERAL MOTORS'S litigation support resources.
5. That he worked closely with the engineering consultants and experts available in the defense of the GENERAL MOTORS'S products liability actions. Technical and engineering materials, internal memoranda, correspondence and other documents were easily accessible to attorneys in the Products Section; in fact, the Products Section is and was responsible for producing and managing of these materials.
6. That such corporate documents would not have been available to MR. PICCIN, other than in his capacity as a staff attorney employed by GENERAL MOTORS CORPORATION.
7. Further, MR. PICCIN was closely involved with the formulation of strategy to be used by Defendant, GENERAL MOTORS CORPORATION, in the defense of products liability actions. He was privy to discussions on techniques and tactics applied by GENERAL MOTORS CORPORATION in such actions.
8. That the knowledge derived by MR. PICCIN from this involvement was derived only in connection with his employment as a staff attorney, and would fall within the attorney-client privilege.
9. That MR. PICCIN remained in the Product Section until June of 1972, and *1185 left the employ of the Defendant, GENERAL MOTORS CORPORATION, in June of 1974.
10. That the procedures and practices of the Product Section of GENERAL MOTORS CORPORATION General Counsel's Office are essentially the same today as they were in 1972. Most of the personnel there in 1972 are still employed by GENERAL MOTORS CORPORATION in the same or somewhat the same capacities today.
11. That many of the consultants and experts retained and utilized by GENERAL MOTORS CORPORATION are the same today as in 1972.
12. That defense strategies and techniques have not significantly changed from those employed in the defense of products liability actions in 1972.
13. That, because of the above facts, MR. PICCIN possesses relevant confidential information which he derived from his position as Staff Counsel for GENERAL MOTORS CORPORATION.
FURTHER AFFIANT SAYETH NOT
 /s/ Joseph M. Rozek 
 AFFIANT
At the hearing held on the motion, counsel for GMC relied heavily on this court's decision in Sears, Roebuck & Co. v. Stansbury, 374 So.2d 1051 (Fla. 5th DCA 1979). In that case, it was established that an attorney, Mr. Gobel Dean, represented Roper Corporation in 1972 in an action against Roper and Sears, Roebuck, wherein it was contended that a Craftsman rotary power lawnmower was negligently designed by Roper, and manufactured by Roper for Sears. In the course of this representation, Dean conferred with Roper's house counsel and its engineer, George C. Clarke, who had designed the lawnmower. Subsequently, in 1978, Dean's law firm undertook representation of a plaintiff again suing Sears and Roper based upon an alleged defect in the design of a Craftsman rotary power lawnmower designed by Clarke for Roper. Affidavits filed in support of a motion by Sears and Roper to disqualify Dean's law firm from such representation indicated that confidential information relating to design, engineering and testing techniques used by Roper in the manufacture of its lawnmower for Sears had been given to Dean in the earlier case. The trial court denied the motion and that order of denial was quashed by this court upon granting of certiorari review. In that case we observed:
The trial court apparently has misconstrued our holding in Holland v. Tenenbaum, 360 So.2d 493 (Fla. 4th DCA 1978). In Holland, both movant and respondent presented conflicting affidavits regarding an attorney's disqualification. Thus, in order to resolve the conflict, we ordered an evidentiary hearing. In the instant case, no affidavits have apparently been offered on behalf of respondents in rebuttal of the facts sworn to in the appellants' affidavits. Thus, absent a conflict on material issues of fact raised by opposing affidavits, there is no requirement that further testimony be offered in support of the motion to disqualify counsel.
374 So.2d at 1054.
In the instant case, there are no conflicting affidavits. There is only the affidavit of Rozek. The petitioner, Piccin, simply contends that it is insufficient, standing alone, to warrant his disqualification. He points out, for example, that he left the products liability section in June, 1972, whereas the truck in question is a 1974 model.
The affidavit does lack the factual specificity present in the Sears case. But it is unrebutted, and the inference is readily available from that affidavit, that there is a substantial relationship between the expertise confided to Piccin in 1972 (in respect to the design of the rear end, the fuel supply system, and the compartment materials of Chevrolet trucks) and the expertise at issue in the present case; indeed, just such a relationship as existed between the two Craftsman designs in Sears. Nothing in the record before the trial court, nor before this court, suggests to the contrary. No evidence, other than the affidavit of Rozek, was presented, nor has it been suggested at *1186 any point that such counter-evidence could be presented. In this case, unlike the situation we confronted in Pantori, Inc. v. Stephenson, 384 So.2d 1357 (Fla. 5th DCA 1980), a hearing on the merits to disqualify was held by the trial court. The transcript of that hearing reveals no objection by Attorney Piccin to the timeliness of the affidavit nor any request or motion for additional time within which to present witnesses to the court or obtain counter-affidavits. The purpose of that hearing, as we observed in Pantori, was to determine if one party had an unfair advantage over the other which could only be eliminated by removing the attorney. Based on the unrebutted record before the trial judge, we cannot find that he departed from the essential requirements of law in granting the motion for disqualification.
Accordingly, the petition for certiorari is DENIED.
SHARP, W., J., concurs.
COWART, J., dissents without opinion.