722 So.2d 971 (1999)
The SCHOOL BOARD OF BROWARD COUNTY, Florida, Petitioner,
v.
POLERA BUILDING CORPORATION, a Florida Corporation, and Perri Builders, Inc., a Florida corporation, as joint venturers doing business as Polera Construction Corporation/Perri Builders, Inc., a joint venture, Respondents.
No. 98-3072
District Court of Appeal of Florida, Fourth District.
January 6, 1999.
F. Malcolm Cunningham, Jr., and Amy L. Fischer of Cunningham & Self, P.A., West Palm Beach, and Michael A. Robinson of Michael A. Robinson, P.A., Fort Lauderdale, for petitioner.
Stuart H. Sobel of Siegfried, Rivera, Lerner, De La Torre & Sobel, P.A., Coral Gables, for respondents.
GROSS, J.
The School Board of Broward County seeks certiorari review of an order denying its motions to disqualify respondents' law firm and to lift a stay of discovery into matters pertaining to the disqualification issue. This court has jurisdiction. See Springtree Country Club Plaza, Ltd. v. Blaut, 642 So.2d 27, 28 (Fla. 4th DCA 1994); Fla.R.App.P. 9.030(b)(2).
As joint venturers, respondents Polera Building Corporation and Perri Builders, Inc. contracted with the school board to be the general contractor on the Eagle Ridge project, which involved the construction of an elementary school. The contract required the general contractor to construct the school using an architectural prototype designed by Shrum Ali Associates, Inc. (Shrum Ali).
The general contractor sued the school board for breach of contract. In addition to *972 claims which detailed the school board's own deficiencies in performance, the complaint contained allegations concerning the inadequacy of the Shrum Ali prototype and the architect's non-performance of contractual obligations attributable to the school board. The complaint also based a claim on problems arising from the school board's minority business enterprise program. The allegations of the complaint include: that the general contractor was required to use minority subcontractors identified by the school board on a list; that the school board "expressly warranted" that the listed subcontractors were licensed, insured, bondable and competent to do the work; that the school board knew that many of the listed subcontractors were incompetent, but failed to so inform the general contractor; and, that due to the nonperformance of the listed subcontractors, the general contractor had to pay twice for their work.
The Shrum Ali prototype was the subject of previous litigation when it was used in the construction of other school buildings in Broward. The claim based on the minority business enterprise program was similar to a claim filed against the school board by another contractor, S.T. Wicole Construction Corporation of Florida, Inc. (Wicole). The law firm defending the school board in that case was Becker & Poliakoff, P.A. The Wicole case involved many of the same minority subcontractors who worked on the Eagle Ridge project in this case. Prior to the commencement of the lawsuit in this case, Becker & Poliakoff had filed an indemnification action for the school board against Shrum Ali, which theoretically included claims against the school board on the Eagle Ridge project due to deficiencies in the architect's plans and performance.
The school board moved to disqualify the respondents' entire law firm, Siegfried, Rivera, Lerner, De La Torre & Sobel, P.A. (Siegfried, Rivera). The motion was supported by an affidavit executed by Steven Lesser, an attorney at Becker & Poliakoff. The motion alleged that Mark Weinstein, an attorney with Siegfried, Rivera, had been employed as an associate at Becker & Poliakoff, one of the law firms which represent the school board in construction litigation cases; that the instant case was pending at the same time that Weinstein represented the school board on closely related matters; that while he was employed at Becker & Poliakoff, Weinstein worked on the indemnification suit brought by the school board against Shrum Ali; that Weinstein had been given access to all of Becker & Poliakoff's confidential files on school board matters, including the Eagle Ridge project; that Weinstein had consulted with school board representatives and experts hired to evaluate construction claims; that Weinstein was privy to the law firm's theories of defense and liability in related cases; and that Weinstein had consulted with the school board's officer in charge of the minority business program about the subcontractors included on the approved list.
In sum, the school board contended that Weinstein had obtained confidential client information relating to the Eagle Ridge project as well as confidential information in different lawsuits on matters substantially related to those at issue in this case.
The general contractor responded with Weinstein's affidavit, in which he alleged that he had performed only "routine and perfunctory assignments" relating to school board cases, "almost exclusively involving library research and the drafting of pleadings and minor discovery matters." The affidavit conceded that Siegfried, Rivera had assigned Weinstein to cases against the school board. However, Weinstein denied that he reviewed or discussed any confidential matters relating to school board litigation or communicated with the board's expert witnesses about any Shrum Ali project while he was employed at Becker & Poliakoff. He claimed that his participation in the indemnification case was limited to working on a motion to dismiss. He admitted that he had communicated with the board's minority contract administrator, but claimed that his conversations were limited to requesting information for a partner.
After the school board's motion to disqualify was filed, Siegfried, Rivera terminated Weinstein's employment and took the position that the disqualification issue was moot. Both parties had already scheduled discovery *973 on Weinstein's contact with the school board. However, at the general contractor's behest, the trial court stayed discovery until after the hearing on the motion to disqualify.
The trial court denied the motion to disqualify based on the affidavits alone, without taking any further evidence.
Nissan Motor Corp. in U.S.A. v. Orozco, 595 So.2d 240 (Fla. 4th DCA 1992), controls the disposition of this case. In that case, the plaintiff filed a wrongful death case against Nissan, which hired the firm of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Weschler (Rumberger) to defend it. A partner in Rumberger's Orlando office was in charge of the case. The Orlando partner requested that a Miami associate of the firm cover eight discovery depositions, most of which were for custodians of the decedent's employment and medical records. The Miami associate took the depositions. Later, the associate left the Rumberger firm and became an associate in the law firm of the plaintiff's attorneys.
Once the Rumberger firm learned of the associate's defection, it filed a motion to disqualify the plaintiff's attorneys. After the motion was filed, the plaintiff's law firm terminated the employment of the former Rumberger associate. The trial court conducted an evidentiary hearing, and ruled that Rule 4-1.10 of the Rules Regulating the Florida Bar[1] contained the applicable rules for disqualification; the court found that the Miami associate never acquired confidential information and that no one at the plaintiff's law firm received confidential information from the associate.
In Nissan, this court agreed with the analysis of the trial court and denied certiorari. We found that Rule 4-1.10(c) applied to a situation where the lawyer with the purported conflict is terminated by the firm sought to be disqualified after the filing of a motion for disqualification.
Paraphrased, subsection (c)(1) and (2) of rule 4-1.10 provide that, when a lawyer has terminated an association with a firm, as [the Miami associate] has with [plaintiff's attorneys], the firm is not prohibited from representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless the matter is the same (which it is here) and any lawyer remaining in the [plaintiff's attorney's] firm has information protected by rules 4-1.6 and 4-1.9(b) material to the matter.
595 So.2d at 243. We held that the trial court had correctly applied Rule 4-1.10(b) and (c) to the facts of the case and that the applicable law supported
the trial court's decision ... to make a factual determination regarding whether [the Miami associate] himself had any confidential information and whether the attorneys in [the firm representing the plaintiff] acquired knowledge through [the Miami associate] regarding his prior client, Nissan.
Id. at 244.
Disqualification cases under Rule 4-1.10 require the trial court to make a factual determination of the issues specified in subsections (b) and (c). See Koulisis v. Rivers, No. 98-1043, ___ So.2d ___, 1999 *974 WL 2689 (Fla. 4th DCA Jan.6,1999); Nissan Motor Corp., 595 So.2d at 243-44. The affidavits filed in this case conflict as to whether Weinstein learned of confidential matters during his tenure at Becker & Poliakoff. The affidavits present very different versions of the nature and scope of Weinstein's work on school board cases at Becker, Poliakoff. The general contractor cites to cases in which the disqualification issue was decided without an evidentiary hearing; however, where material facts are in dispute, an evidentiary hearing is required. See Holland v. Tenenbaum, 360 So.2d 493 (Fla. 4th DCA 1978); Dawson v. Bram, 491 So.2d 1275 (Fla. 2d DCA 1986); cf., Trautman v. General Motors Corp., 426 So.2d 1183 (Fla. 5th DCA 1983); Sears, Roebuck & Co. v. Stansbury, 374 So.2d 1051 (Fla. 5th DCA 1979).
The trial court departed from the essential requirements of law by denying the school board's motion for disqualification solely on the basis of affidavits submitted by the parties. The petition for writ of certiorari is granted and the order denying the motion for disqualification is quashed. We remand the case for an evidentiary hearing on the issues set forth in Rule 4-1.10(b) and (c). See Koulisis. The trial court shall reconsider its ruling on the discovery issue in light of the requirement that an evidentiary hearing must be held.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] Rule 4-1.10 provides:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), 4-1.9, or 4-2.2.
(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
(d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.