817 So.2d 994 (2002)
ALLSTATE INSURANCE COMPANY; and Michael Collette, Petitioners,
v.
Susan Myles BOWNE, Respondent.
No. 4D01-4192.
District Court of Appeal of Florida, Fourth District.
May 29, 2002.
*995 Sheila M. Cesarano and Rene J. Gonzalez-Llorens of Shutts & Bowen LLP, Miami, for petitioners.
Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., and Gregory W. Coleman of Burman, Critton, Luttier & Coleman, West Palm Beach, and G. Russell Petersen of G. Russell Petersen, P.A., Vero Beach, for respondent.
*996 FARMER, J.
Petitioners seek common law certiorari to disqualify opposing lawyers, relief that was rejected by the trial judge. Because the motion below demonstrated no basis to grant such extraordinary relief, we deny the petition outright.
The underlying lawsuit involves a claim by a former employee of Allstate Insurance Company (Allstate) contending that she was terminated on account of age and other impermissible reasons. Shortly after the lawsuit was filed, plaintiffs attorney communicated with a former managerial level employee (witness) of Allstate who is now employedat least nominally by an entity called Allstate Financial Services (Financial). The witness ultimately gave a formal statement (statement) under oath to plaintiffs attorney.
Allstate's basis for disqualifying claimant's lawyer is that the communication violated Disciplinary Rule (DR) 4-4.2.[1] That Rule bars a lawyer from having communications with managerial level employees of an opposing entity represented by counsel. Allstate supported its motion to disqualify counsel with affidavits. As the trial court characterized the content of Allstate's affidavits:
"In summary these affidavits state that [Financial] does not have any employees and, through an agreement, [Allstate] assigns its employees to [Financial]. As a result, [witness's] wages; employee benefits (health, dental, life, and disability insurance); pension plan, and company car are all paid by [Allstate]. This relationship under which Allstate provides employees to [Financial] is contractual. This service agreement provides that [Allstate] will provide facilities, employees and services to its subsidiaries for the purposes of running those subsidiaries."
According to the affidavits, while it is true that witness is now employed by Financial rather than Allstate directly, the hierarchy of the enterprise under the Allstate banner of related entities is such that witness is really controlled by Allstate.
The trial court also explained that the business card of witness states that he is a Field Compliance Principal and Registered Principal for Financial. The court pointed out that the filing with the Secretary of State shows Allstate is a foreign corporation with its principal address in Illinois. The filing for Financial shows that its principal address is in Nebraska.
With regard to the conduct of plaintiffs counsel in undertaking communications with witness, the trial judge found:
"Prior to the meeting [counsel] reviewed the Rules of Professional Conduct, the bar opinions and the case law interpreting these rules including H.B.A. Management, Inc. v. [Estate of] Schwartz, 693 So.2d 541 (Fla.1997). [Counsel] also called the Florida Bar Ethics Hotline and secured an opinion that an ex parte interview of a former employee was not an ethical violation."
The court also found that at the beginning of the statement counsel asked the following:
"Q. Where are you employed?
"A. I am employed for Allstate Financial Services, LOC
"Q. Is that a separate and distinct company from Allstate Insurance Company. *997 The company for which Susan Myles was employed?
"A. It's a wholly owned subsidiary of the Allstate Insurance Corporation."
Summing up its holding, the trial court said:
"At the time that [counsel] took the statement, [witness] was working as a manager for [Financial] and as such [counsel] had no reason to believe that [witness's] statements could constitute admissions on behalf of [Allstate]. As to the allegations of possible confidential information being given by [witness] the defendants do not point to any specific information but simply allege that this might have happened."
The court thereupon denied the motion for disqualification.
As the trial judge pointedly understood, the gist of the problem is not whether the line between the separate entities involved in the employment of the witness is blurred enough that he can be thought technically still an employee of the original employing entity, Allstate. In short, it does not matter that the witness, though nominally employed by Financial, was actually under the control of Allstate. If it were, entities could bury the identity of the actual employer and controlling entity under layers of corporate affiliates, thereby seeking to insulate witnesses from presuit investigation and information gathering. Such a circumstance would be contrary to the civil justice system's preference for access to information that is not privileged.
The issue is whether the lawyer having the communication had a reasonable basis to believe that the witness was now employed by a different entity than the party sued, so as to place the matter under H.B.A. Management Inc. v. Estate of Schwartz, 693 So.2d 541 (Fla.1997). H.B.A. Management held that DR 4-4.2 does not apply when the witness is no longer employed by the opposing entity in the lawsuit. In our case today, the trial judge found from the affidavits and statement taken from the witness that the lawyer in good faith believed that the witness was now employed by a different entity and thus no longer had any power to make admissions on behalf of Allstate. Because the witness was not in a management position with Allstate, he was no longer able to make admissions binding on Allstate in his communications with plaintiff's counsel. Hence under H.B.A. Management, DR 4-4.2 could not be violated by the communications.
In our opinion the good faith of the lawyer taking the statement from the witness is significant as to any possible disqualification under DR 4-4.2particularly in the absence of a showing of disclosure of confidential information that would not ordinarily be subject to discovery. After all, we recognize a "good faith exception" to the exclusionary rule in criminal cases, thereby allowing the use of evidence gathered in violation of the Fourth Amendment, so long as the police officer in question acted under an objectively reasonable, good faith belief in the authority to seize the evidence. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (exclusionary rule should be modified in case of objectively reasonable good-faith reliance on search warrant); Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (evidence need not be excluded that was obtained by police in good faith reliance on state statute later found to be unconstitutional); Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (evidence seized in violation of Fourth Amendment not subject to exclusionary rule where police acted in good faith reliance on computer records *998 later shown to be in error). If evidence gathered in violation of the Constitution may be used at a criminal trial where the officer acted in good faith, surely a lawyer can avoid disqualification under DR 4-4.2 while gathering evidence for a client and acting in an objectively reasonable, good faith belief that the lawyer's conduct was not barred under the Rule.
Claimant's lawyer researched Rule 4-4.2 and attempted to comply with the Rule as clarified and explained by the Supreme Court in H.B.A. Management. He sought an ethics advisory opinion from The Florida Bar before he proceeded. At the very beginning of the formal statement, he asked the witness if his current employer is a "separate and distinct company" from his former employer. The witness explained that his current employer, Financial, is a subsidiary of Allstate, the company that had employed him during the events involved in the pending lawsuit. The filings with the Secretary of State show that Allstate and Financial are separate entities with their principal addresses in different states, one in Illinois and the other in Nebraska. The attorney had no reason to believe that the witness's statements could constitute admissions on behalf of Allstate. Although the judge did not use these words, his findings are nevertheless fairly understood as implying that the lawyer's reliance was objectively reasonable.
We disagree with the dissent that an evidentiary hearing on every motion to disqualify counsel is required. The prior decisions of this court do not so hold. In School Board of Broward County v. Polera Building Corp., 722 So.2d 971 (Fla. 4th DCA 1999), we did not hold that an evidentiary hearing is required in every case. As Judge Gross made clear in his opinion for the court:
"The affidavits filed in this case conflict as to whether Weinstein learned of confidential matters during his tenure at Becker & Poliakoff. The affidavits present very different versions of the nature and scope of Weinstein's work on school board cases at Becker, Poliakoff. The general contractor cites to cases in which the disqualification issue was decided without an evidentiary hearing; however, where material facts are in dispute, an evidentiary hearing is required." [e.s.]
722 So.2d at 974; see also Plaza Resorts Inc. v. Janus American Group Inc., 811 So.2d 850 (Fla. 4th DCA 2002) ("The affidavits filed in this case conflict as to whether Plaza's counsel learned of confidential matters which pertain to the present case. Where material facts are in dispute concerning a motion for disqualification, an evidentiary hearing is required." [e.s.] ). Because there is no conflict in this case as to the pertinent facts, we do not understand what an evidentiary hearing would accomplish, except to cause the parties unnecessary expense.
It bears repeating that the disqualification of a party's lawyer in a civil case is an immensely unusual remedy, one that must be employed only in limited circumstances. Arcara v. Philip M. Warren, P.A., 574 So.2d 325, 326 (Fla. 4th DCA 1991); General Accident Insurance Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986); see also Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721-22 (7th Cir.1982) ("we also note that disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel ... also serves to destroy a relationship by depriving a party of representation of their own choosing. ... *999 [S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment.").
In spite of this policy, petitioner argues that all doubts must be resolved in favor of disqualification and that this remedy should be granted whenever there is a mere "appearance of impropriety" as regards the Disciplinary Rules. Allstate thus argues that disqualification is required in all cases involving violations of DR 4-4.2. Not only is that argument contrary to the principle that disqualification should be employed sparingly, but it is also contrary to the usual remedy under DR 4-4.2, which is to bar the acquisition of such information during discovery, or to bar the use of any improper communications already had in violation of the Rule. We hold as a general rule that disqualification of counsel under DR 4-4.2 is not presumptively required, and violations thereof should ordinarily be remedied in some other way.
Although Allstate argues there is a fear that some unspecified confidential information might have been disclosed in the communication, none of its affidavits support such a suspicion and conspicuously fail to point to any factual basis to believe that such a disclosure might have occurred. In fact, Allstate argues that:
"It is irrelevant whether [the witness] disclosed confidences during the ex parte contacts; rather, Rule 4-4.2's breach occurred in the contact. Allstate should not bear the burden of proving what its manager discussed with opposing counsel outside of its presence."
Thus we do not face a case in which the lawyer obtained privileged information through an improper ex parte contact. In contrast, however, both School Board of Broward County v. Polera Building. Corp., 722 So.2d 971 (Fla. 4th DCA 1999), and Plaza Resorts Inc. v. Janus American Group Inc., 811 So.2d 850, 2002 WL 460582 (Fla. 4th DCA Mar.27, 2002), involve former attorneys now working for the opposition and bringing privileged client communications with them. In both of these cases disqualification was required by DR 4-1.10 whichunlike DR 4-4.2 expressly provides for disqualification.[2]
We have no way of knowing at this stage whether the statement of the witness will ever play any role at trial in this case. Indeed it may never even be offered. The witness may testify at trial, but by then he will surely have been subjected to deposition by the parties. We again emphasize that the witness is a person who would already be expected to be a witness in this case because he was personally involved in the events that resulted in the termination of claimant's employment. Hence if an evidentiary issue arises at trial involving the statement, and the opposing party can make a showing that some unfair advantage is implicated by the use of the statement, the trial judge will then be in a position to employ some remedy less drastic than lawyer disqualification. Throwing the party's lawyer out of the case simply should not even be considered where other remedies may mitigate any problem of unfairness that might later arise.
This restraint is also quite in keeping with the very narrow role of common law *1000 certiorari before judgment in civil cases. See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987) (pretrial certiorari relief in civil cases is "extraordinary remedy" that "should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of nonfinal orders"); Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996) ("there are two indispensable ingredients to common law certiorari when sought to review pretrial orders of the circuit courts: (1) irreparable injury to the petitioner that cannot be corrected on final appeal (2) caused by a departure from the essential requirements of law."). Because the moving party has not shown that any confidential information was actually disclosedor, for that matter, was capable of being disclosed by this witnesscommon law certiorari does not lie to review a pre-trial decision that has not been shown to play any role in the outcome.
PETITION FOR CERTIORARI DENIED.
WARNER, J., concurs.
POLEN, J., dissents with opinion.
POLEN, J., dissenting.
I respectfully dissent. This court previously has held that a trial court's decision on the matter of disqualification of counsel based solely upon affidavits and without an evidentiary hearing is contrary to the essential requirements of the law. See School Bd. of Broward County v. Polera Bldg. Corp., 722 So.2d 971 (Fla. 4th DCA 1999) (citation omitted). Here, the court denied petitioners relief because it ultimately determined that the subject witness was not an employee of Allstate for purposes of applying DR 4-4.2. This determination was a factual issue that warranted an evidentiary hearing beforehand. As such, I would grant the petition for writ of certiorari, quash the order under review, and remand the case for an evidentiary hearing.
NOTES
[1] See Fla. Bar Code Prof. Resp. D.R. 4-4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.").
[2] See See Fla. Bar Code Prof. Resp. D.R. 4-1.10(b) ("When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.").